## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ELIZABETH DIAL,                    )
                                   )
                    Plaintiff,     )
                                   )          CIVIL ACTION
v.                                 )
                                   )          No. 21-01071-KHV-ADM
DENIS McDONOUGH,                   )
Secretary, Department of Veteran Affairs,  )
                                   )
                    Defendant.     )
_____)

## MEMORANDUM AND ORDER

Elizabeth Dial filed suit against her former employer the United States Department of Veteran Affairs (the "VA"), alleging that it discriminated against her on the basis of race, maintained a hostile work environment and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  This matter is before the Court on Defendant's Motion For Summary Judgment (Doc. #67) filed July 1, 2022.  For reasons stated below, the Court sustains defendant's motion in part.

## Legal Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Hill v. Allstate Ins. Co., 479 F.3d 735, 740 (10th Cir. 2007).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  A "genuine" factual dispute requires more than a mere scintilla of evidence in support of a party's position.  Id. at 252.

The moving party bears the initial burden of showing the absence of any genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Nahno-Lopez v. Houser, 625 F.3d 1279, 1283 (10th Cir. 2010).  Once the moving party meets the initial burden, the burden shifts to the nonmoving party to demonstrate that genuine issues remain for trial as to those dispositive matters for which she carries the burden of proof.  Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986).  To carry her burden, the nonmoving party may not rest on her pleadings but must instead set forth specific facts supported by competent evidence.  Nahno-Lopez, 625 F.3d at 1283.

The Court views the record in the light most favorable to the nonmoving party.  Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir. 1991).  It may grant summary judgment if the nonmoving party's evidence is merely colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 250–51.  In response to a motion for summary judgment, a party cannot rely on ignorance of facts, speculation or suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.  Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988).  The heart of the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Liberty Lobby, 477 U.S. at 251–52.

**Facts**

The following facts are uncontroverted or viewed in a light most favorable to plaintiff, the nonmoving party.[1]

---

[1]     Defendant objects that plaintiff failed to authenticate Exhibits 13, 14 and 15 and that the exhibits are not self-authenticating.  "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."  Fed. R. Evid. 901(a).  Plaintiff has not

(continued . . .)

<u>Plaintiff Joins The Robert J. Dole VA Medical Center</u>

In December of 2011, plaintiff, a Black female, began working for the VA in Kansas City, Missouri as Supervisor, Medical Administrative Specialist.  In that role, plaintiff supervised approximately 35 medical support assistants ("MSAs") and two lead MSAs.  In February of 2019, plaintiff transferred to the Robert J. Dole VA Medical Center ("RJDVAMC").

Plaintiff applied for a supervisor position in the Office of Community Care ("OCC") at the RJDVAMC.  By telephone, she interviewed with Ruth Duda (White female), the Chief of Community Care, and DaShaun McCray (Black female), a Nurse Manager at the OCC.  Duda did not know that plaintiff was Black until she reported for work at the OCC.  Plaintiff's position in the OCC was a promotion from GS-9 to GS-11.

---

attempted to authenticate these exhibits and she did not respond to defendant's <u>Motion To Strike</u> (Doc. #88) which raised this issue. Even so, plaintiff's declarations—which are included in Exhibit 14—are self-authenticating. <u>See</u> Fed. R. Evid. 901(b)(4) (exhibits sufficiently authenticated considering "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances"); <u>United States v. Isabella</u>, 918 F.3d 816, 843 (10th Cir. 2019) ("bar for authentication of evidence is not particularly high"). For purposes of defendant's motion for summary judgment, the Court therefore will consider plaintiff's declarations but otherwise will not consider Exhibits 13, 14 and 15.

Defendant also argues that plaintiff's declarations are "not in proper form," <u>Motion To Strike</u> (Doc. #88) filed October 4, 2022 at 5, apparently because plaintiff qualified her statements with the language "to the best of my knowledge and ability." <u>Dial ROI</u> (Doc. #81-11) at 106, 171. D. Kan. Rule 56.1 allows the use of non-notarized declarations as alternatives to affidavits. The requirements for a valid declaration are set forth in 28 U.S.C. § 1746, which states that a valid declaration under penalty of perjury made within the United States must be "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date).'" 28 U.S.C. § 1746(2). Plaintiff's declarations substantially comply with the requirements of Section 1746. <u>See</u> <u>Cobell v. Norton</u>, 391 F.3d 251, 260 (D.C. Cir. 2004) ("to the best of [my] knowledge, information or belief" disclaimer sufficient under Section 1746); <u>United States v. Roberts</u>, 308 F.3d 1147, 1154–55 (11th Cir. 2002) (declarant susceptible to prosecution for perjury despite "to the best of my knowledge and belief" disclaimer in declaration); <u>Silva v. Gregoire</u>, No. C05–5731–RJB, 2007 WL 2034359, at *3 (W.D. Wash. July 3, 2007) ("to the best of my knowledge" disclaimer substantially complies with Section 1746). The Court therefore overrules defendant's objection to the form of plaintiff's affidavits.

When plaintiff began to work, the OCC consisted of the Chief of Community Care, two supervisors, approximately eight nurses and 20 to 25 MSAs.  Plaintiff supervised the MSAs, and McCray supervised the nurses.  Plaintiff and McCray reported to Duda.  Dr. Robert Cummings, Chief of Staff, was plaintiff's second line supervisor and Duda's direct supervisor.  Dr. Cummings reported directly to the hospital director.

The OCC assists veterans who cannot get appointments at the main facility.  When plaintiff arrived at the OCC, staff was implementing the MISSION Act, which increased everyone's workload.

<u>Plaintiff's Job Duties And Training</u>

When plaintiff reported for work, she expected a job description.  Duda was responsible for creating job descriptions.  In October of 2019, eight months after plaintiff started working at the OCC, Duda emailed her an outdated supervisor job description.  For example, it stated that plaintiff oversaw the nurses and that she reported to the Chief of Dental.  McCray oversaw the nurses, however, and plaintiff reported to Duda—not the Chief of Dental.  Duda told plaintiff that she would correct the mistakes and return an updated copy to plaintiff.  Duda did not do so.

Even though defendant hired plaintiff for one full-time position, Duda assigned plaintiff the duties of three full-time positions: supervisor, program specialist and administrative officer ("AO").  In her supervisor capacity, plaintiff (1) oversaw the MSAs, (2) conducted performance appraisals, hiring, staffing levels and timecard approvals and (3) met with staff individually and as a group.  As program specialist, plaintiff (1) pulled reports, (2) organized specialty clinics for the MSAs and (3) ensured that the MSAs scheduled appointments for veterans.  As AO, plaintiff (1) addressed Congressional inquiries and (2) worked with doctors regarding revenues and budgets.  Plaintiff never received position descriptions for the program specialist and AO jobs.

Plaintiff did not require training for the supervisory aspect of her job because she had served as a supervisor for eight years at the VA in Kansas City.  Plaintiff needed training, however, for her other duties at the OCC.  When plaintiff requested training, Duda denied the requests.  Duda instructed plaintiff to reach out to her peers with questions because Duda did not know the AO duties.  When McCray attempted to train plaintiff, Duda told McCray to stop.  McCray believes this instruction was racially motivated.  The only time Duda scheduled a training for plaintiff, she interrupted the training with Skype messages and phone calls to plaintiff.

Duda repeatedly assigned plaintiff new job duties, completed tasks and busywork.  McCray and plaintiff believe that Duda wanted plaintiff to fail because of her race.  For example, Duda would badger plaintiff with remedial tasks in the mornings, disrupting plaintiff's days and making it impossible for her to timely complete tasks.  Duda also changed the assignments of plaintiff's staff without informing plaintiff, leaving assigned tasks uncovered.  Plaintiff had to add those tasks to her full schedule.  McCray testified that Duda treated her staff of color like this, but not her White staff.

Plaintiff worked after hours and on weekends to manage her ever-increasing workload.  One weekend, plaintiff worked nine hours one day and eleven hours the next day.  Plaintiff did not request overtime because plaintiff and McCray believed that overtime was not available for supervisors.  The record seems to reflect that Duda told either McCray or plaintiff that they could not request overtime.  McCray later learned that this was not correct.  Plaintiff never received overtime pay.

Performance Appraisal In October 2019

On October 24, 2019, Duda issued plaintiff a performance appraisal for February 4, 2019 to September 20, 2019.  Duda rated plaintiff as fully successful or exceptional on a scale of

unacceptable to fully successful to exceptional.  Plaintiff thinks that Duda should have rated her exceptional in all five elements of the review.  The evaluation upset plaintiff because she did not see how she could receive negative ratings and comments without Duda giving her the tools necessary to do her job.

Meeting And Presentation In January 2020

In early January of 2020, plaintiff prepared a presentation regarding department numbers for the leadership team.  Plaintiff prepared the presentation based on discussions with a group practice manager ("GPM"), who met with Dr. Cummings to learn what the presentation should include.  Plaintiff then sent the presentation to Duda for review, and on January 9, 2020, Duda arranged a meeting with plaintiff.  The GPM joined the meeting by phone.  During the meeting, Duda disagreed with the GPM about what information plaintiff should include in the presentation.  Duda stood over plaintiff, raised her voice and spoke condescendingly.  McCray overhead Duda yelling at plaintiff.

The next day, plaintiff presented the presentation to leadership.  During her presentation, Duda interrupted, embarrassed and undermined plaintiff.  Ultimately, Duda took over the presentation.

Meeting With Dr. Cummings On January 24, 2020

On January 24, 2020, McCray and plaintiff met with Dr. Cummings.  At this meeting, plaintiff and McCray reported that Duda was discriminating against them on the basis of race and maintaining a racially hostile work environment.  Dr. Cummings offered to mediate a conversation between plaintiff, McCray and Duda.  Plaintiff accepted this offer.  Plaintiff canceled this meeting, however, after Duda's behavior worsened—increasing plaintiff's stress, anxiety and panic attacks.  Dr. Cummings told Duda about the complaints and instructed her to stop "micromanaging."

Exhibit B (Doc. #69-2) at 16.

> On January 28, 2020, McCray sent Dr. Cummings an email stating as follows:
>
> [Duda] is retaliating against me and my peer for reporting her to you.  She continues to create a hostile work environment that has not improved- [Duda] has bragged that she has received actions which has been unsuccessful in motivating change in her behavior.  Therefore, I am declining mediation and pursuing other filing rights to address the following issues: harassment, retaliation, hostile work environment and discrimination due to race.

Exhibit K (Doc. #79-5) at 2.  McCray copied plaintiff on this email.  On January 29, 2020, plaintiff responded stating as follows:

> I concur with all that is noted below [in McCray's email].  I'd like to add that although I did not think it could get worse, this has become [an] even more increasingly . . . hostile work environment.  Since we have reported concerns with [Duda's] abuse of power, daily [Duda] is sending an overwhelming amount of emails asking questions, providing inaccurate information, contradicting our directives and unjustifiably criticizing our work.  This is interrupting our workflow making it challenging to get the needed work done.  She is also providing a great deal of busy work. I have been an exceptional supervisor for many years.  If she would just leave us alone and allow us to manage the processes and people.

Id. at 1.

### EEO Counseling

On January 31, 2020, plaintiff began the Equal Employment Opportunity ("EEO") complaint process for federal employees by initiating contact with an EEO counselor.  Duda learned of plaintiff's EEO activity in February of 2020.  On March 6, 2020, Duda told plaintiff that she was "upset" that plaintiff filed with the EEO.  Dial ROI (Doc. #81-11) at 167.

### Letter Of Reprimand Dated March 2, 2020

On March 2, 2020, Duda issued plaintiff a letter of reprimand for "inappropriate conduct" and "failure to follow instructions."  Duda charged plaintiff with inappropriate conduct because she had informed an employee about a proposed disciplinary action in a public space.  Specifically, when plaintiff was walking the aisles between MSA workstations, an MSA asked about an

upcoming meeting.  Due to time constraints, plaintiff needed to answer the MSA immediately, so she silently mouthed "discipline" to the MSA in her cubicle.  No one could overhear or did overhear this conversation.  VA "protocol" prohibited raising the topic of disciplinary matters in an open cubical area due to confidentiality concerns.  Exhibit G (Doc. #88-5) at 3.  Duda, however, regularly informed staff about disciplinary matters in public spaces without regard to who was listening.

Duda also cited plaintiff for submitting disciplinary actions directly to HR.  According to Duda, she instructed plaintiff to bring all proposed disciplinary actions to her before submitting them to HR, and plaintiff failed to do this.  Once again, plaintiff felt confused and unjustifiably criticized because Duda had told plaintiff to discipline her staff more.

A written reprimand is two steps up under the graduated disciplinary policy.  Plaintiff's written reprimand contained false allegations that Duda had counseled plaintiff on multiple occasions about policy but that she failed to follow it.  Duda testified that she could not identify what policy plaintiff had violated, but that she knew plaintiff had violated some confidentiality policy and that HR had confirmed her belief.

The minimum penalty for a first offense for failure to safeguard confidential matter is admonishment, and the maximum penalty is removal.  The minimum penalty for a first offense for deliberate failure or unreasonable delay in carrying out instructions is admonishment, and the maximum penalty is reprimand.  The minimum penalty for deliberate refusal to carry out any proper order from a supervisor having responsibility for the work of the employee is reprimand and the maximum penalty is removal.  Exhibit E (VA Handbook) (Doc. #68-6).

The reprimand indicated that it would remain in plaintiff's official personnel folder for three years, or could be withdrawn and destroyed after two years, depending on plaintiff's

behavior.  While in plaintiff's personnel folder, defendant could use the reprimand to determine an appropriate penalty for other infractions.

Other Acts Between February 13 And April 15, 2020

On various occasions, Duda ignored plaintiff, undermined her authority by meeting with her staff and assigning them new tasks without telling plaintiff and assigned plaintiff completed tasks.

In February of 2020, plaintiff asked Duda about approving additional time off for one of her employees.  Plaintiff told Duda that she was unfamiliar with this approval process and was not sure if it was her responsibility.  On February 29, 2020, Duda emailed Matthew Irick, an HR Specialist, asking about the employee's request.  In this email, Duda stated "[plaintiff] does not want to be responsible for anything, yet is determined to write her staff up for everything." Exhibit A, Dial Dep. (Doc. #69-1) at 114.  Duda forwarded the email chain to plaintiff, even though plaintiff did not need to take any action because Dr. Cummings approved the request.

Around February or March of 2020, plaintiff considered applying for a reassignment.  Duda told her that any available position for plaintiff would still report to her.

Miscellaneous

When plaintiff first began her employment at the OCC, Duda required her to discipline five or six employees, even though plaintiff did not have knowledge or information about the employees' jobs and abilities.  As a result, plaintiff could not build rapport with her staff. Throughout plaintiff's time at the OCC, Duda instructed her to discipline her employees for various acts.  Specifically, Duda instructed plaintiff to stand where employees arrived to catch them coming in late.  Plaintiff prepared proposed disciplinary packets for these employees, but Duda would not discipline some of them.  Duda then reprimanded plaintiff by counseling her for

"excessive discipline" of her staff.

According to plaintiff and McCray, Duda disproportionately disciplined Black employees. For example, at some point, the Neurology team was backlogged.  Duda instructed plaintiff to discipline Rowana Gulley (Black female) for this backlog.  Plaintiff did not understand why Duda would discipline Gulley because the whole team was responsible for the backlog.  Duda did not discipline, White members of the team.  McCray had never seen disciplinary action for backlog issues and believes that Gulley was unnecessarily and exclusively disciplined because of her race. Exhibit D, McCray Dep. (Doc. #81-7) at 75–76; Exhibit A, Dial Dep. (Doc #69-1) at 52.

According to plaintiff and McCray, Duda lacked communication with her Black staff and held them to a higher level of scrutiny than White staff.  Duda generally treated her non-Black staff more respectfully.

EEO Complaint

On April 6, 2020, plaintiff filed a formal EEO complaint of employment discrimination, which she subsequently amended.  Plaintiff's amended EEO complaint alleged as follows: (1) Duda provided plaintiff with a position description on October 3, 2019, eight months after plaintiff started at the OCC; (2) on October 24, 2019, Duda gave plaintiff a performance appraisal with negative comments; (3) during a meeting on January 9, 2020, Duda stood over plaintiff, made her feel nervous and intimidated and raised her voice at plaintiff; (4) during plaintiff's presentation on January 10, 2020, Duda took over the presentation; (5) on January 13, 2020, Duda sent plaintiff an email informing her of new/additional job responsibilities; (6) on March 3, 2020, Duda issued plaintiff a letter of reprimand; (7) from February 13 through April 15, 2020, Duda repeatedly undermined, interrupted and obstructed plaintiff's workflow, made offensive and derogatory remarks and accused plaintiff of pursuing and soliciting feedback from employees; and (8) on

April 15, 2020, defendant forced plaintiff to retire from her supervisory position.

Retirement

Plaintiff felt like defendant forced her to retire.  Duda did not threaten to re-assign or fire plaintiff.  In fact, Duda threatened to keep plaintiff, telling her that all open positions reported to her.  Plaintiff concluded that at the VA under Duda, she had no future.

During the alleged harassment and retaliation, plaintiff dropped weight.  Her hair fell out in clumps, and she sought medical and psychotherapeutic intervention for anxiety and depression.  Plaintiff experienced suicidal thoughts and called the suicide hotline on multiple occasions.  Plaintiff's coworkers noticed and commented on her condition.  McCray noticed that plaintiff had become so thin that she needed to pin her clothing.

On April 7, 2020, plaintiff requested early retirement.  On April 15, 2020, Duda told plaintiff that she needed to submit an assignment that day—not at the end of the week, when plaintiff thought it was due.  Plaintiff sent an email to Duda, with a copy to McCray, at 2:59 p.m. stating as follows: "Effective today, I am retiring due to the hostile work environment and consistent retaliation that is adversely impacting my health."  Exhibit A, Dial Dep. (Doc. #69-1) at 117.  Plaintiff did not plan to retire on April 15, 2020.  After plaintiff retired, Duda hired two MSA supervisors and one AO to take over plaintiff's duties.

Procedural History

On March 18, 2021, plaintiff filed this action.  Under Title VII, plaintiff alleges that defendant discriminated against her based on race, maintained a racially hostile work environment, retaliated against her for complaining to Dr. Cummings and constructively discharged her.  Pretrial Order (Doc. #66) filed June 30, 2022 at 16–17.  Defendant asserts that it is entitled to summary judgment on each of plaintiff's claims.

## Analysis

Defendant asserts that it is entitled to summary judgment on all of plaintiff's claims because (1) plaintiff did not establish that Duda subjected her to a racially hostile work environment; (2) plaintiff did not timely exhaust administrative remedies for any actions before December 17, 2019; (3) plaintiff cannot establish a prime facie case of disparate treatment or retaliation for any of her claims; (4) plaintiff cannot show that defendant's legitimate, non-retaliatory reasons for its actions against plaintiff were pretext for discrimination; and (5) plaintiff cannot show that defendant constructively discharged her.

## I.      Hostile Work Environment

Defendant argues that it is entitled to summary judgment on plaintiff's hostile work environment claim because plaintiff cannot show unwelcomed harassment, harassment based on race or harassment pervasive or severe enough to alter the terms, conditions or privileges of her employment.

To establish a prima facie case of hostile work environment, plaintiff must demonstrate that based on the totality of circumstances, (1) she is a member of a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race and (4) the harassment was pervasive or severe enough to alter the terms, conditions or privileges of employment and created an abusive work environment.  Lounds v. Lincare, Inc., 812 F.3d 1208, 1222 (10th Cir. 2015).  In determining whether an environment is sufficiently hostile to be actionable, courts look at the totality of the circumstances, "including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it interferes with an employee's work performance."  Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998) (internal quotations and citations omitted).

## A.      Unwelcomed Harassment

Defendant argues that Duda's behavior did not rise to the level of harassment.  Specifically, defendant asserts that plaintiff had a stressful job and that Duda merely criticized her. Memorandum In Support of Defendant's Motion For Summary Judgment (Doc. #68) filed July 1, 2022 at 51.  To constitute harassment, the conduct must be unwelcome in the sense that the employee "did not solicit or incite it, and in the sense that the employee regarded the conduct as undesirable or offensive."  Morton v. Steven Ford-Mercury of Augusta, Inc., 162 F. Supp. 2d 1228, 1238 (D. Kan. 2001).  Viewing the light in the evidence most favorable to plaintiff, Duda treated plaintiff in a demeaning, degrading and dismissive manner by yelling at her, belittling her, giving her an unbearable workload and undercutting her performance to upper management and other employees.  Plaintiff has therefore identified a genuine issue of material fact whether Duda's behavior constituted unwelcomed harassment.

## B.      Based On Race

Defendant argues that plaintiff cannot establish that any alleged harassment was based on race because Duda did not make any comments about plaintiff's race.  Plaintiff presented evidence that Duda yelled at, belittled and dismissed plaintiff and McCray, the two Black supervisors, but did not act this way to White employees.  Duda also disciplined plaintiff and other Black employees but would retract plaintiff's discipline of White employees.  Viewing the evidence in the light most favorable to plaintiff, she has identified a genuine issue of material fact whether Duda's treatment was based on race.

## C.      Sufficiently Severe or Pervasive

Defendant also seeks summary judgment on the ground that plaintiff has not shown harassment severe or pervasive enough to alter the terms of her employment and create an abusive

working environment. Plaintiff argues that under the totality of the circumstances, Duda's degrading behavior, failure to train, usurpation of plaintiff's supervisory authority and plaintiff's increased workload was severe and pervasive enough to create an abusive working environment.

To survive summary judgment, plaintiff must show that a rational jury could find that her workplace was permeated with discriminatory intimidation, ridicule and insult that was sufficiently severe or pervasive enough to alter the conditions of her employment and create an abusive working environment. Davis v. U.S. Postal Serv., 142 F.3d 1334, 1341 (10th Cir. 1998). A discriminatorily abusive environment will often "detract from an employee's job performance, discourage employees from remaining on the job, or keep them from advancing in their careers." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). The work environment must be subjectively and objectively hostile and abusive. Lounds, 812 F.3d at 1222. The Court must consider not only the effect the discriminatory conduct had on plaintiff but also the impact it likely would have on a reasonable employee in plaintiff's position. Hurde v. Jobs Plus-Med, 299 F. Supp. 2d 1196, 1211 (D. Kan. 2004). The severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is "quintessentially a question of fact," and the Tenth Circuit does not have sharply defined rules. Harris, 510 U.S. at 21–22; McCowan v. All Star Maint., Inc., 273 F.3d 917, 923 (10th Cir. 2001).

Plaintiff has presented evidence that (1) Duda yelled at and stood over plaintiff on several occasions; (2) Duda regularly assigned plaintiff new job duties and reprimanded plaintiff for not understanding these duties; (3) Duda threatened plaintiff that all open positions for transfer reported to her; (4) after the VA hired plaintiff for one full-time position, Duda made plaintiff perform the work of three full-time positions; (5) Duda told plaintiff that she was upset with her for filing an EEO complaint; and (6) Duda dismissed and ignored plaintiff.

Viewing the evidence in the aggregate and in the light most favorable to plaintiff, she has established a genuine issue of material fact whether Duda's conduct was so severe or pervasive as to alter the conditions of her employment and create an abusive working environment.  See Throupe v. Univ. of Denver, 988 F.3d 1243, 1251 (10th Cir. 2021) (in evaluating hostile work environment claim, isolated incidents viewed in aggregate).  The Court therefore overrules defendant's motion for summary judgment on plaintiff's hostile work environment claim.

## II.     Exhaustion Of Administrative Remedies

Defendant argues that plaintiff did not timely exhaust administrative remedies with respect to any incidents of discrimination or retaliation before December 17, 2019.

A federal employee who wishes to file a race discrimination claim must initiate contact with an EEO counselor within 45 days to try to informally resolve it.  See 29 C.F.R. § 1614.105(a)(1).  Before filing a civil action, the employee must file a formal charge with her agency EEO office.  29 C.F.R. § 1614.106; see 42 U.S.C. § 2000e-16(c) (federal employee may file civil action as provided in Section 2000e-5 if aggrieved by agency disposition of complaint).  These exhaustion requirements protect administrative agency authority and promote judicial efficiency by allowing the agency to resolve matters internally.  Monreal v. Potter, 367 F.3d 1224, 1233 (10th Cir. 2004).  A plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEO office or commission.  MacKenzie v. City & Cnty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005).

Defendant contends that plaintiff did not timely exhaust administrative remedies because she failed to contact an EEO counselor before January 31, 2020.  Specifically, defendant argues that plaintiff failed to timely exhaust her claims of disparate treatment and retaliation related to

(1) Duda's failure to provide a position description to plaintiff before October 3, 2019, (2) plaintiff's performance evaluation in October 24, 2019 and (3) any failure to train prior to December 17, 2019.

In contrast to the majority of Circuits which permit plaintiffs to rely upon a continuing violation theory, the Tenth Circuit requires plaintiff to contact an EEO counselor within 45 days of each discrete discriminatory act.  Unexcused failure to timely contact an EEO counselor precludes suit in federal court.  See Sizova v. Nat'l Inst. of Standards & Tech., 282 F.3d 1320, 1325 (10th Cir. 2002).  Because plaintiff did not contact an EEO counselor within 45 days of any discrete act before December 17, 2019 and she has not articulated any legally sufficient excuse for her failure to do so, she failed to timely exhaust administrative remedies.  Defendant is therefore entitled to summary judgment on these claims.

**III.     Title VII Disparate Treatment Claims**

Defendant argues that plaintiff cannot establish a prime facie case on any disparate treatment claim and cannot show that its non-discriminatory business reasons are pretextual. Plaintiff alleges that because of her race (1) Duda failed to train plaintiff; (2) on January 9, 2020, Duda treated plaintiff negatively in a meeting; (3) on January 10, 2020, Duda undermined and embarrassed plaintiff during a presentation; (4) on January 13, 2020, Duda assigned plaintiff new job duties; and (5) on March 2, 2020, Duda issued plaintiff a letter of reprimand.

Plaintiff may establish that defendant acted with discriminatory intent under Title VII either directly, through direct or circumstantial evidence, or indirectly, through the inferential burden-shifting scheme established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804 (1973).  See Jones v. Okla. City Pub. Schs., 617 F.3d 1273, 1278–79 (10th Cir. 2010).  Here, plaintiff relies on the indirect method of proving discrimination.

Under the McDonnell Douglas burden-shifting framework, plaintiff has the initial burden of establishing a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802; Sanders v. Sw. Bell Tel., L.P., 544 F.3d 1101, 1105 (10th Cir. 2008).  The "precise articulation" of a prima facie case depends on the context of the claim and the nature of the alleged adverse employment action.  Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005).  In general, a plaintiff may make a prima facie case by showing that (1) she belongs to a protected class, (2) she suffered an adverse employment action and (3) the adverse employment action occurred under circumstances which "give rise to an inference of discrimination."  Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1181 (10th Cir. 2002).  An "inference of discrimination" may be shown in various ways, including "actions or remarks made by decision makers," "preferential treatment given to [an] employee outside the protected class," or "the timing or sequence of events leading up to plaintiff's termination."  Plotke, 405 F.3d at 1101 (internal citations omitted).

If plaintiff satisfies her burden, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions.  McDonnell Douglas, 411 U.S. at 802–03.  If defendant does so, the burden shifts back to plaintiff to show a genuine issue of material fact whether the proffered reason is pretextual, i.e. unworthy of belief.  Sanders, 544 F.3d at 1105.  To do this, plaintiff can show weakness, implausibility, inconsistency, incoherency or contradiction in defendant's proffered reasons.  Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

The Court addresses in turn each claim of disparate treatment.

**A.      Failure To Train**

Defendant argues that any failure to train plaintiff is not an adverse employment action. The Tenth Circuit liberally construes the phrase "adverse employment action."  Sanchez v. Denver Pub. Sch., 164 F.3d 527, 532 (10th Cir. 1998).  "Such actions are not limited to monetary losses

in the form of wages or benefits," and the action does not need to be "tangible."  Id.  Instead, the Tenth Circuit takes a "case-by-case" approach, examining the unique factors relevant to the situation before it.  Id.  The Court looks for acts that "carry significant risk of humiliation, damage to reputation and concomitant harm to future employment prospects."  Annett v. Univ. of Kan., 371 F.3d 1233, 1239 (10th Cir. 2004) (internal citations omitted).  The term does not extend, however, to a "mere inconvenience or alteration of job responsibilities."  Sanchez, 164 F.3d at 532.

Under some circumstances, failure to train may constitute an adverse employment action.  See, e.g., Durkin v. City of Chicago, 341 F.3d 606 (7th Cir. 2003); Ryan v. Town of Schererville, Ind., No. 2:03–CV–530, 2005 WL 1172614, at *21 (N.D. Ind. May 4, 2005) (failure to train adverse employment action if employee denied training necessary for promotion).  Contra Freeman v. Spencer Gifts, Inc., 333 F.Supp.2d 1114, 1129 (D. Kan. 2004) (refusal to train not adverse job action); Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 407 (5th Cir. 1999) (summary judgment proper when denial of training did not affect employment status or benefits).  Here, however, plaintiff has not presented evidence that defendant's failure to train her resulted in discrete adverse employment action after December 17, 2019.  Accordingly, on this record, defendant's failure to train plaintiff does not constitute adverse employment action.  Defendant is therefore entitled to summary judgment on this claim.

### B.     January 9, 2020 Meeting And January 10, 2020 Presentation

Defendant argues that the meeting on January 9, 2020 and the presentation on January 10, 2020—when Duda yelled at plaintiff in a meeting and took over her presentation the next day— do not rise to the level of adverse employment action.  The Court agrees.  Although the Tenth Circuit liberally defines adverse employment action, it does not extend to a supervisor yelling at

or closely monitoring an employee.  Hoko v. Huish Detergents, Inc., 453 F. App's 799, 802–03 (10th Cir. 2011) (yelling at employee not adverse employment action); Tapia v. City of Albuquerque, 170 F. App'x 529, 534 (10th Cir. 2006) (close monitoring of employee, which caused stress, not adverse employment action).  On this record, plaintiff has not established a prima facie case based on the January 9, 2020 meeting and the January 10, 2020 presentation.  The Court therefore sustains defendant's motion for summary judgment on these claims.

### C.     Increased Workload

Defendant argues that plaintiff's increased workload did not result in any significant change in the terms and conditions of plaintiff's employment.  "[W]hile an increased workload might constitute an adverse employment action in some circumstances," a "generalized" claim on this point is insufficient.  Jones v. Barnhart, 349 F.3d 1260, 1269–70 (10th Cir. 2003).  The key inquiry is whether the increased workload was accompanied by a "significant change in duties, responsibilities, or working conditions."  5 U.S.C. § 2302(a)(2)(A)(xii); see also Humbles v. Principi, 141 F. App'x 709, 711–12 (10th Cir. 2005) (claim failed when employee "failed to show his workload increased in relation to other employees, or that others were granted pay increases while he was not").

Here, plaintiff established that (1) she worked three full-time positions at the OCC, even though defendant hired her for one full-time position; (2) she worked extensive weekend hours (19 hours in one weekend) to manage job duties; (3) on January 13, 2020, Duda once again changed and added to plaintiff's job duties; (4) Duda did not expect other supervisors to also work three full-time positions; and (5) after plaintiff left the OCC, defendant hired three people to replace her. Viewing the evidence in the light most favorable to plaintiff, she has presented facts which create a genuine issue of material fact whether her increased workload was adverse employment action.

Defendant also argues that plaintiff cannot establish an inference of discrimination because she has not presented evidence that Duda treated her less favorably than similarly situated, non-Black employees.  Plaintiff correctly responds that she need not do so.  See Plotke v. White, 405 F.3d 1092, 1099 (10th Cir. 2005) (variety of circumstances can give rise to inference of discriminatory motive including actions or remarks by decisionmakers that could be viewed as reflecting discriminatory animus and preferential treatment to employees outside protected class). To show that her increased workload under circumstances which give rise to an inference of discrimination, plaintiff relies upon evidence that Duda created a hostile work environment.  For reasons stated above as to plaintiff's hostile work environment claim, plaintiff has also demonstrated a prima facie case of disparate treatment based on her workload.  The burden therefore shifts to defendant to articulate a legitimate, nondiscriminatory reason for plaintiff's workload.

Defendant argues that Duda had legitimate business reasons for plaintiff's workload because the MISSION Act increased everyone's workload at the OCC.  Plaintiff presented evidence that the MISSION Act did not require that she perform duties for three separate positions, however, and that Duda assigned plaintiff work that Duda or other employees had already completed.

Viewing the record evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant's stated reasons for assigning plaintiff the workload of three full-time positions was pretext for discrimination.  The Court therefore overrules defendant's motion for summary judgment on this claim.

### D.     Letter Of Reprimand Dated March 2, 2020

Defendant argues that the letter of reprimand dated March 2, 2020 is not adverse

employment action.  Defendant acknowledges that some disciplinary actions, such as warning letters and written reprimands, constitute adverse employment action.  See, e.g., Porter v. Potter, No. 04-4138-SAC, 2006 WL 1006882, at *6 (D. Kan. Apr. 13, 2006); Marx v. Schnuck Mkts., Inc., 76 F.3d 324, 329 (10th Cir. 1996).  A letter or reprimand only constitutes adverse employment action, however, if it adversely affects the terms and conditions of plaintiff's employment, i.e. it affects the likelihood that plaintiff will be terminated, undermines plaintiff's current position or affects plaintiff's future employment opportunities.  Porter, 2006 WL 1006882, at *6.

Plaintiff presented evidence that under the graduated discipline policy, a written reprimand is two levels up the disciplinary chain and that defendant had not disciplined her before this letter. Plaintiff further showed that because the letter remained in her file for two to three years and a reprimand for failure to follow instructions and violating confidentiality policy is a particularly egregious violation for someone in a supervisor position, the letter prevented her from requesting or being considered for another position away from Duda.  A jury therefore could find that the letter constituted adverse employment action.  Cf. Hall v. Interstate Brands Corp., No. 08-2073, 2009 WL 2043570, at *4 (D. Kan. July 13, 2009) (four verbal or written reprimands not adverse employment actions because plaintiff made no showing that reprimand had impact on plaintiff's employment and employer took no action beyond reprimands themselves).

Defendant also argues that the letter of reprimand does not give rise to an inference of discrimination.  In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000).  In drawing such an inference, the factfinder must be able to conclude, based on a preponderance of the evidence, that discrimination was a determinative factor in the employer's actions—simply disbelieving the employer is

insufficient.  Applying this principle requires the Court to determine whether a jury could find that discrimination played a part in the employer's actions.  Young v. Dillon Co.'s Inc., 468 F.3d 1243, 1250 (10th Cir. 2006).

Plaintiff presented evidence that the letter included false statements that Duda previously counseled plaintiff regarding the citations in the reprimand.   Plaintiff further showed that she did not audibly speak about the disciplinary meeting in public and even if she did, Duda regularly did so as well.  Even more, before the letter of reprimand, Duda instructed plaintiff to submit more proposed disciplinary actions and then reprimanded plaintiff for sending those actions directly to HR.  Plaintiff contends that this is another example of confusing and conflicting demands that she received from Duda.  Finally, Duda testified that she did not know what confidentiality policy plaintiff had violated, but she nevertheless knew that plaintiff had violated some policy.  The Court agrees that viewed in a light most favorable to plaintiff, the circumstances surrounding the letter of reprimand give rise to an inference of discrimination and therefore establish a prime facie case of disparate treatment.

Defendant argues that Duda had legitimate business reasons for the letter of reprimand because plaintiff violated policy when she informed an employee about a disciplinary meeting in a public setting.  Defendant also argues that plaintiff failed to follow instructions by sending proposed disciplinary actions directly to HR, without consulting Duda.  Even so, plaintiff submitted evidence from which a reasonable jury could conclude that these reasons are pretextual because the letter of reprimand contained false statements from Duda and was unwarranted.  The Court overrules defendant's motion for summary judgment on this claim.

## IV.    Retaliation

Defendant argues that plaintiff cannot establish a prime facie case for retaliation because

she (1) did not engage in protected opposition to discrimination and (2) did not suffer any materially adverse action. Defendant further argues that plaintiff cannot show that Duda's nondiscriminatory business reasons for the letter of reprimand are pretext for retaliation.

Title VII prohibits retaliation against an employee because she has "opposed" an unlawful practice under Title VII or because she made a charge, assisted or participated in an investigation, proceeding or hearing under Title VII. 42 U.S.C. § 2000e-3(a); Salemi v. Colo. Pub. Emps. Ret. Ass'n, 747 F. App'x 675, 695 (10th Cir. 2018). When a plaintiff offers indirect evidence to support a Title VII retaliation claim, the Court once again applies the McDonnell Douglas framework. Bekkem v. Wilkie, 915 F.3d 1258, 1267 (10th Cir. 2019).

To establish a prima facie case of retaliation, plaintiff must show that (1) she engaged in protected opposition to discrimination, (2) she suffered a materially adverse action and (3) a causal nexus exists between the adverse employment action and the protected activity. Payan v. UPS, 905 F.3d 1162, 1172 (10th Cir. 2018). Plaintiff's burden to establish a prima facie case is not onerous. Texas Dept. of Comm. Affs. v. Burdine, 450 U.S. 248, 253 (1981); see also Bird v. West Valley City, 832 F.3d 1188, 1200–01 (10th Cir. 2016) (burden is light).

## A.     Protected Opposition To Discrimination

Defendant argues that plaintiff did not engage in protected opposition to discrimination before filing her EEO complaint. Protected activities under Title VII fall under two categories: participation and opposition. 42 U.S.C. § 2000e-3; Vaughn v. Villa, 537 F.3d 1147, 1151 (10th Cir. 2008). Plaintiff relies on the "opposition clause," which prohibits an employer from retaliating against an employee who communicates her belief that the employer engaged in discrimination. Crawford v. Metro. Gov't, 555 U.S. 271, 276 (2009).

Plaintiff has presented evidence that she engaged in protected opposition beginning on

January 24, 2020, when she reported discrimination and harassment by Duda to Dr. Cummings. The record reveals a genuine issue of material fact whether plaintiff engaged in protected opposition.

### B.    Materially Adverse Actions

Defendant argues that plaintiff cannot show that she suffered materially adverse action and that even if she can, Duda had nondiscriminatory reasons for her actions.

Plaintiff must show that the challenged action was materially adverse, i.e. it might have dissuaded a reasonable worker from making or supporting a charge of discrimination. See Burlington N. Santa Fe Ry Co. v. White, 548 U.S. 53, 68 (2006). Deciding whether an employer's actions are "materially adverse" is a case-specific exercise that requires an objective inquiry that does not turn on a plaintiff's personal feelings. Semsroth v. City of Wichita, 555 F.3d 1182, 1184–85 (10th Cir. 2009). Plaintiff asserts that because of her protected activity, she suffered the following materially adverse actions: (1) Duda harassed her; and (2) Duda filed a letter of reprimand against her.

#### 1.    Retaliatory Harassment

Retaliatory harassment, if sufficiently severe, may constitute adverse employment action for purposes of a retaliation claim. Gunnell v. Utah Valley State Coll., 152 F.3d 1253, 1264 (10th Cir. 1998). "Petty slights, minor annoyances, and simple lack of good manners" will not deter "a reasonable worker from making or supporting a charge of discrimination." McGowan v. City of Eufala, 472 F.3d 736, 742 (10th Cir. 2006).

Plaintiff has presented evidence—included to a large extent above to show a hostile work environment—that Duda (1) assigned plaintiff completed tasks, (2) unnecessarily interrupted her workflow; (3) undermined plaintiff to her staff; (4) made a derogatory remark about plaintiff to an

HR employee on February 29, 2020; and (5) generally ignored plaintiff after she met with Dr. Cummings.  For purposes of establishing a prima facie case, plaintiff has presented sufficient evidence that these acts, when considered in the aggregate, rise to the level of materially adverse action.

Viewing the evidence in the light most favorable to plaintiff, she has established a prime facie case of retaliatory harassment.  Further, defendant has not offered non-discriminatory reasons for the purported acts of harassment.  The Court therefore overrules defendant's motion for summary judgment on plaintiff's retaliatory harassment claim.

### 2.  Letter Of Reprimand

Defendant argues that the letter of reprimand dated March 2, 2020 is not a materially adverse employment action.  As explained above, viewed in a light most favorable to plaintiff, a reasonable jury could find that the letter was unwarranted.  An unwarranted letter of reprimand could dissuade a reasonable worker from making or supporting a charge of discrimination.  See Befort v. Dep't of Com., No. 08-2598-KHV, 2009 WL 10707844, at *16 (D. Kan. Dec. 17, 2009) (unwarranted letter of reprimand materially adverse action).

Defendant argues Duda had legitimate business reasons for the letter of reprimand because plaintiff violated confidentiality policy and failed to follow instructions.  Plaintiff presented evidence that these reasons are pretextual because (1) the letter contained false statements about counseling plaintiff, (2) Duda could not identify a confidentiality policy that plaintiff allegedly violated and (3) Duda regularly discussed disciplinary matters in public.  Viewed in a light most favorable to plaintiff, a reasonable jury could conclude that Duda's decision to issue a letter of reprimand was pretextual.  The Court overrules defendant's motion for summary judgment on this claim.

**V.     Constructive Discharge**

As part of her alleged damages on all claims, plaintiff claims that defendant constructively discharged her.  Defendant argues that it is entitled to summary judgment on this theory because plaintiff voluntarily resigned from her position.

Constructive discharge "occurs when an employer unlawfully creates working conditions so intolerable that a reasonable person in the employee's position would feel forced to resign." Lockheed Martin Corp. v. Admin. Review Bd., 717 F.3d 1121, 1133 (10th Cir. 2013). When an employee resigns in the face of such circumstances, Title VII treats that resignation as tantamount to discharge. Green v. Brennan, 578 U.S. 547, 555 (2016).  To establish constructive discharge, plaintiff must therefore show that (1) her employer created conditions such that a reasonable person in her position would have felt compelled to resign and (2) she actually resigned. Id. (citing Penn. State Police, 542 U.S. at 148) ("A constructive discharge involves both an employee's decision to leave and precipitating conduct.").

Defendant first argues that it did not constructively discharge plaintiff because she filed retirement paperwork on April 7, 2020 citing health and family concerns.  Plaintiff's resignation letter, however, is not dispositive.  The relevant question is whether the working conditions were so intolerable that plaintiff had no choice but to retire.

Defendant argues that plaintiff (1) cannot show that she had no other choice but to resign because she declined Dr. Cummings' offer to mediate and (2) cannot show intolerable working conditions.  Viewing the evidence in the light most favorable to her, plaintiff has shown that Duda gave her unduly burdensome job responsibilities—the equivalent of three full-time positions—such that she had no other choice to quit.  Duda also did not train plaintiff on her job duties, regularly assigned her completed tasks, interrupted her workflow and threatened her that all open

positions reported to Duda.  The record further reflects that plaintiff agreed to meet with Dr. Cummings and Duda but later retracted this acceptance in light of Duda's retaliatory behavior. Plaintiff has presented a genuine issue of material fact whether she objectively had no choice but to quit and therefore felt compelled to resign.  The Court overrules defendant's motion for summary judgment on plaintiff's constructive discharge claim.

**IT IS THEREFORE ORDERED** that Defendant's Motion For Summary Judgment (Doc. #67) filed July 1, 2022 is **SUSTAINED IN PART and OVERRULED IN PART**.  The Court sustains defendant's motion on plaintiff's Title VII disparate treatment claims on events predating December 17, 2019, any failure to train, the meeting on January 9, 2020 and the presentation on January 10, 2020.  The Court overrules defendant's motion on plaintiff's Title VII hostile work environment claim, disparate treatment claims for increased workload and the letter of reprimand dated March 6, 2020, retaliation claims and constructive discharge claim.

Dated this 29th day of November, 2022 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge