IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ELIZABETH DIAL, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF VETERANS AFFAIRS, <br><br> Defendant. | Case No. 21-1071-KHV-ADM |

## MEMORANDUM AND ORDER

This matter comes before the court on intervenor Dashaun McCray's Motion to Modify Protective Order. (ECF 174.) By way of the motion, McCray asks the court to modify the protective order (ECF 16) to allow her to use documents produced in this case by defendant Department of Veterans Affairs ("the VA") in her pending case against the VA, *McCray v. McDonough*, D. Kan. Case No. 22-2154-DDC-ADM ("*McCray*"). As explained below, the motion is denied. It asks the court to change the most fundamental term of the protective order—that documents exchanged may only be used in *this* litigation—to ameliorate McCray's failure to timely pursue discovery in *McCray*. The court will not condone such gamesmanship.

However, the court *sua sponte* modifies the protective order to hold in abeyance plaintiff Elizabeth Dial's obligation to return or destroy VA-produced documents until the court decides discovery disputes in *McCray*. Should the court determine that McCray, who is represented by the same counsel as Dial, is entitled to certain documents from the VA, then Federal Rule of Civil Procedure 1's directive to ensure the "just, speedy, and inexpensive determination of every action" may be supported by allowing McCray to access and use the documents already in her counsel's possession.

1

I.   **BACKGROUND**

*Dial v. VA*

On March 18, 2021, Dial filed this action against her former employer, the VA, alleging that it discriminated against her on the basis of race (African American), maintained a hostile work environment, retaliated against her, and constructively discharged her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.   Dial's complaint largely centered on the actions of her former supervisor at the VA, Ruth Duda.   According to Dial, Duda systematically discriminated against Dial and other black females and "engaged in a pattern or practice of demeaning and degrading behavior."   (ECF 1, at 2.)

To help facilitate discovery, the parties agreed to a protective order, which the court entered on October 28, 2021.   (ECF 16.)   The protective order's central tenet, as set forth in its opening paragraph, was that confidential information disclosed in discovery would be "protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals."   (*Id.* at 1.)   The parties specifically limited disclosure of confidential information to the parties and their retained agents or witnesses in "this litigation."   (*Id.* at 4.)   Discovery commenced, and the VA produced documents it designated as confidential under the protective order.   As relevant to the present motion, the VA produced "664 pages comprised of investigations of other employee complaints of discrimination at the Robert J. Dole VA Medical Center in Wichita, Kansas" and "Transcript and Notes of Ruth Duda."   (ECF 174, at 6.)

On November 29, 2022, the court dismissed part of Dial's disparate-treatment claim, but otherwise denied the VA's motion for summary judgment.   (ECF 96.)   On February 3, 2023, Dial and the VA informed the court that they had reached a settlement, and the court closed this case. (ECF 135.)

*McCray v. VA*

Meanwhile, Dial's attorneys filed a similar lawsuit against the VA on behalf of Dial's former co-worker, McCray. That lawsuit was filed on April 22, 2022, so the case schedule in the *McCray* case trailed behind the *Dial* case. Like Dial, McCray alleged that the VA discriminated against her on the basis of race (African American), maintained a hostile work environment, retaliated against her and constructively discharged her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. McCray had worked at the same VA location as Dial, and Duda was also her supervisor. McCray's complaint asserted similar abuses by Duda, including that Duda usurped her authority, overloaded McCray with work, generally berated McCray, and retaliated against McCray for complaining about race discrimination.

On October 21, 2022, McCray served her first request for production of documents ("RFPs") on the VA. (*McCray,* ECF 25.) After the VA requested and received an extension of time from McCray to respond, the VA served its response to these RFPs on January 9, 2023. (*McCray,* ECF 47.) In doing so, the VA objected to (among other things) producing certain documents that it had previously produced in *Dial*. McCray did not challenge the objections or otherwise move to compel further responses.

On January 12, the court dismissed McCray's hostile-work-environment and constructive-discharge claims, but allowed McCray's disparate-treatment and retaliation claims to proceed. (*McCray,* ECF 51.)

On March 6, McCray served her first interrogatories. (*McCray*, ECF 80.) After the VA requested and received an extension of time from McCray to respond, the VA served its responses to these interrogatories on April 20. (*McCray,* ECF 85, 90.) Again, the VA's response to the

interrogatories asserted a number of objections. And, again, McCray did not challenge the objections or otherwise move to compel further responses.

On March 3, McCray served her second RFPs on the VA. (*McCray,* ECF 79.) The VA again requested and received an extension of time from McCray to respond to these RFPs—this time, an extension of time to May 18, which was the day before discovery ended. (*McCray,* ECF 85, 95.) When the VA served its response to the second RFPs, the VA again took a different approach than it had in the *Dial* case by asserting a number of objections to producing certain documents that it had previously produced in *Dial*.

On June 20, the court convened a pretrial conference in the *McCray* case. (*McCray,* ECF 104.) During the conference, McCray asserted that discovery was not yet complete because she was still pursuing additional discovery from the VA. Upon questioning, however, she conceded that she had waived her opportunity to seek fuller responses to her first set of RFPs and interrogatories under the 30-day rule set forth in D. KAN. RULE 37.1(c). As a result, the only remaining discovery dispute in *McCray* is the extent to which the VA must produce additional documents in response to McCray's second RFPs. The court directed the parties to further meet and confer in an attempt to resolve or at least narrow this dispute, and set deadlines to tee up the dispute for court resolution at the reconvened pretrial conference if necessary. (*Id.* at 2.)

McCray's Intervention in *Dial*

Meanwhile, while discovery was still ongoing in the *McCray* case, the parties agreed to settle the *Dial* case. On February 14, the VA sent Dial's counsel an email reminder that, under the protective order, counsel was obliged to return or destroy confidential documents the VA produced in discovery. (ECF 174-5.) Dial's counsel responded that they "still need these documents for McCray so we are not inclined to return them." (*Id.*) The VA replied that same

4

day that it would not agree to any modification of the protective order. (*Id.*) McCray then waited until March 21 before filing a motion to reopen this case "so that she [could] file a Motion to Intervene and a Motion to Modify the Agreed Protective Order." (ECF 167, at 1.) The court granted the motion to reopen on April 14 (ECF 170) and, that same day, McCray filed a motion to intervene in *Dial* for the limited purpose of seeking to modify the protective order. (ECF 171.)

On May 25, the court granted McCray's motion to intervene. (ECF 173.) The court determined that McCray satisfied the relatively low standard for permissive intervention, given that her claims against the VA share common questions of law or fact with Dial—specifically, that "McCray and [Dial] worked under Duda at the same VA location and alleged that Duda took similar adverse actions against them based on race." (*Id.* at 3.) The court specifically noted that it was only deciding the question of intervention, not whether McCray was entitled to discover or access documents subject to the protective order. (*Id.* at 3-4.) McCray then filed the present motion to modify the protective order. (ECF 174.)

## II. LEGAL STANDARDS

The parties agree that the court retains the power to modify the protective order in this closed case. *See United Nuclear Corp. v. Cranford Ins. Co.*, 905 F.2d 1424, 1427 (10th Cir. 1990) ("As long as a protective order remains in effect, the court that entered the order retains the power to modify it, even if the underlying suit has been dismissed."). In *United Nuclear*, the Tenth Circuit recognized that stipulated protective orders are "standard practice in complex cases" that promote efficient and complete discovery between the parties because of the assurances of confidentiality. *Id.* The Court noted, however, that "when a collateral litigant seeks access to discovery produced under a protective order, there is a countervailing efficiency consideration— saving time and effort in the collateral case by avoiding duplicative discovery." *Id.* at 1428. In

5

balancing these two considerations, the Tenth Circuit adopted the following standard from the Seventh Circuit:

> Where an *appropriate* modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification. Once such prejudice is demonstrated, however, the district court has broad discretion in judging whether that injury outweighs the benefits of any possible modification of the protective order.

*Id.* (quoting *Wilk v. American Medical Assoc*, 635 F.2d 1295, 1299 (7th Cir. 1980) (emphasis added)). The Court warned that "discovery may not be used merely to subvert limitations on discovery in another proceeding and a collateral litigant has no right to obtain discovery materials that are privileged or otherwise immune from eventual involuntary discovery in the collateral litigation." *Id.* (quoting *Wilk*, 635 F.2d at 1300 (internal quotation and modification omitted)). Ultimately, "modification of a protective order, like its original entry, is left to the discretion of the district court." *Id.* at 1427.

### III. ANALYSIS

McCray's motion to modify the protective order is not what it seems at first glance. On the surface, the motion asks the court to modify Paragraph 10(b), which requires McCray's counsel to return or destroy the VA's confidential documents within 30 days of settlement. (ECF 16 ¶ 10(b).) McCray asks the court to add language to this paragraph stating that a party may retain confidential documents until such time as collateral litigation concludes. (ECF 174, at 10.) But then, McCray's motion goes on to state that such modification would allow McCray to "*use* documents produced in this action in the collateral action." (*Id.* at 2 (emphasis added).) Thus, McCray does not simply seek permission for her counsel to retain the documents the VA produced

6

in *Dial*, but also seeks a determination that she may *use* the documents in *McCray*. So, as a practical matter, McCray actually seeks to modify the protective order's central tenet prohibiting use of produced documents for any purpose other than "prosecuting or defending this action and any appeals." (ECF 16, at 1.) The court denies this request on multiple grounds.

First, McCray counsel's attempt to lay blame on the VA for the current predicament is not well taken. When counsel negotiated the protective order in this case, they included the rather standard language that documents produced thereunder were only to be used in "this litigation." (*Id.* at 4.) But now, McCray's current motion seems to insist that McCray's counsel, for some unexplained reason, is entitled to take that language to mean something other than what it plainly says. Specifically, McCray's counsel apparently wants to simply ignore that provision and use the documents in related litigation. The court will not condone this after-the-fact approach. Counsel who foresee wanting to use documents in a related case should raise this issue with opposing counsel (and/or the court, if necessary) early on in the litigation. The solution is not to lure a party into producing documents while relying on a protective order in the first case, then plan to violate the protective order and count on the court to rescue counsel in that endeavor. A party who produces documents subject to a protective order is entitled to rely on the order's basic tenet that the documents will not be used outside the litigation, absent a showing of good cause to modify that particular term. *See Brigham Young Univ. v. Pfizer, Inc.,* 281 F.R.D. 507, 510 (D. Utah 2012) ("The party seeking to modify a protective order bears the burden of showing good cause for the modification. . . . Reliance on protective orders and the diligence of counsel in observing them is fundamental to litigation between competitors." (internal quotation and citation omitted)). McCray has not made such a showing.

Second, McCray is seeking to modify the protective order for the inappropriate reason that the Tenth Circuit in *United Nuclear* specifically warned against: "to subvert limitations on discovery in another proceeding." 905 F.2d at 1428. McCray's current motion asserts atmospheric-type arguments to the effect that, in *McCray*, the VA's counsel inappropriately obstructed the discovery process by asserting discovery objections. (ECF 174, at 6; ECF 182, at 5.) McCray attempts to cast the VA in a negative light simply because it produced certain documents in *Dial* but lodged objections to producing the same or similar categories of documents in *McCray*. The two cases admittedly bear some overlap, inasmuch as Duda was the supervisor at issue in each. But a defendant is entitled to take a different approach to discovery in two different cases, particularly where, as here, they involve different substantive claims and discovery logistics. The proper vehicle for McCray to have addressed any such arguably improper discovery objections would have been via discovery motion practice in *McCray*.

Instead of following the appropriate channels to secure discovery, however, McCray moved to modify the protective order in *Dial* to circumvent her failure to timely raise discovery disputes in the *McCray* case. As discussed above, McCray failed to timely challenge the VA's objections to her first RFPs and interrogatories. In fact, her counsel admitted at the pretrial conference in *McCray* that he was unaware of D. KAN. RULE 37.1(c)'s 30-day time limit to raise such challenges. As a result, McCray is out of time to enforce responses to her initial discovery in *McCray* and instead seeks to obtain the discovery via *Dial*. *United Nuclear* expressly prohibits this work-around. 905 F.2d at 1428. *See also* CHARLES ALAN WRIGHT, ET AL., 8A FED. PRAC. & PROC. CIV. § 2044.1 (3d ed., April 2023 update) ("If the limitation on discovery in the collateral litigation would be substantially subverted by allowing access to discovery material under a protective order, the court should be inclined to deny modification.").

Third, the same 30-day deadline that McCray missed in *McCray* also operates as a procedural bar to the current motion. McCray says she first became aware of the need to seek modification of the *Dial* protective order on February 14, when the VA's counsel requested return or destruction of documents produced in *Dial*. (ECF 182, at 3.) But McCray did not file her motion to reopen *Dial* for purposes of seeking a modification of the protective order until March 21. Again, this is beyond the 30-day time deadline, and she provides no explanation for her delay.

Finally, the Tenth Circuit has distinguished between modifying a protective order to grant a collateral litigant *access* to discovery material and ruling that the collateral litigant is entitled to *use* the material in the collateral case. While a district court may grant "*access* to discovery under its protective order, 'questions of the *discoverability* in the collateral litigation of the materials discovered in this litigation are, of course, for the collateral courts.'" *United Nuclear*, 905 F.2d at 1428 (emphasis added) (quoting *Superior Oil Co. v. American Petrofina Co.*, 785 F.2d 130, 130 (5th Cir. 1986) (modifications to quotation omitted)). Thus, in this case, the court will not grant McCray's request to allow her to use VA documents produced in this case in *McCray*.

Instead, the court will follow the appropriate procedural path and address the VA's discovery obligations to McCray in the *McCray* case, not in this case. As explained above, although McCray has waived her opportunity to pursue the VA's responses to her first set of RFPs and interrogatories, it remains an open question whether the VA must produce documents in response to McCray's second RFPs. But the discoverability of those materials is an issue for the court to resolve in the *McCray* case, not in this case. To the extent that the court determines that McCray is entitled to discovery of documents in the *McCray* case, it may further the "just, speedy, and inexpensive determination" of the *McCray* case, FED. R. CIV. P. 1, to allow McCray to use documents that are already in her counsels' possession because the VA previously produced them

9

in *Dial*.  For this reason, the court modifies the protective order *sua sponte*.  Paragraph 10(b) of the protective order currently requires McCray's counsel to return or destroy the VA's confidential documents "within 30 days after this litigation concludes by settlement, final judgement, or final order."[1]  (ECF 16 ¶ 10(b).)   This provision is hereby modified to add the following sentence to the end of the paragraph: "Any obligation under this paragraph is held in abeyance until 30 days after the court rules discovery disputes in *McCray*."  Meanwhile, to be clear, McCray's counsel is bound by the protective order provision prohibiting use of any and all documents produced in the *Dial* case—a case that is now closed.  (ECF 16, at 1.)

**IT IS THEREFORE ORDERED** that McCray's Motion to Modify Protective Order (ECF 174) is denied.

**IT IS FURTHER ORDERED** that Paragraph 10(b) of the protective order is modified to hold in abeyance Dial's obligation to return or destroy VA-produced documents until 30 days after the court rules discovery disputes in *McCray*.

Dated July 12, 2023, at Kansas City, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge

---

[1] It is not lost on the court that this is the protective-order provision that McCray's motion ostensibly sought to modify.